Don J. Foty
Texas Bar No. 24050022
(*pro hac vice motion forthcoming*)
HODGES & FOTY, LLP
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone:  713-523-0001
Facsimile:  713-523-1116
dfoty@hftrialfirm.com

Attorney for Plaintiff and the Putative
Class

Anthony J. Lazzaro
Ohio Bar No. 0077962
(*pro hac vice motion forthcoming*)
Alanna Klein Fischer
Ohio Bar No. 0090986
(*pro hac vice motion forthcoming*)
Lori M. Griffin
Ohio Bar No. 0085241
(*pro hac vice motion forthcoming*)
Matthew S. Grimsley
Ohio Bar No. 0092942
(*pro hac vice motion forthcoming*)
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
alanna@lazzarolawfirm.com
lori@lazzarolawfirm.com
matthew@lazzarolawfirm.com

Attorneys for Plaintiff and the Putative
Class

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacob Ortiz, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>V.<br><br>True Food Kitchen Holdings, LLC and FRC Balance, LLC.<br><br>Defendants. | CASE NO: _____<br><br>**PLAINTIFF'S COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

## SUMMARY

1.      The case implicates Defendants True Food Kitchen Holdings, LLC's and FRC Balance, LLC's ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") and the Virginia Minimum Wage Act's ("VMWA") tip credit requirements and the subsequent underpayment of their employees at the federally and state mandated minimum wage rate.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b).  Plaintiff also brings this case as a class action under Rule 23 of the Federal Rules of Civil Procedure for violations of the VMWA.

2.      Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Virginia, under the VMWA. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligation from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise the employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id.* (stating that the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee of the requirements under the FLSA, including: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the worker must receive a minimum "tip credit" hourly rate for all hours worked, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff.

See *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA).  *See* 29 U.S.C. § 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to their tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' work time or for a consecutive period of 30 minutes or more. *See, e.g., Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend

'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time."); *Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendants' motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8.    Defendants violated the FLSA and VMWA in the following respects:

   a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet their minimum wage obligations. In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid; (2) the amount by which the wages are increased on account of the tip credit; (3) that all tips received must be retained except for tips contributed to a valid tip pool; (4) that the hourly rate cannot drop below the minimum tipped wage rate, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendants, which reduced his wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to sweeping floors, mopping floors, taking out trash, wiping walls, doing dishes, and polishing silverware.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week or for a continuous period of time during a shift**: Plaintiff was required to spend greater than 20% of his time and/or more than 30 consecutive minutes performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, refilling condiments, rolling silverware, making tea and coffee, restocking ice, setting up fountain machines, and cleaning and stocking the serving line, amongst other duties.

9.      Therefore, Defendants did not pay Plaintiff and all similarly situated workers the applicable minimum wage, in violation of 29 U.S.C. § 206 and Va. Code Ann. §§ 40.1-28.8 – 40.1-28.12. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.      This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq.* The Court has supplemental jurisdiction over Plaintiff's IMWL claims

pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants' maintain their headquarters and principal place of business in this District.    Additionally, the decision to pay Plaintiff and the Class Members in the illegal manner described in this case Complaint was made in this District.

## PARTIES AND PERSONAL JURISDICTION

12.    Plaintiff Jacob Ortiz is an individual residing in Fairfax, Virginia.  His written consent to this action is attached hereto as Exhibit "A."

13.    The FLSA Class Members are all current and former tipped employees who worked for Defendants for at least one week during the three year period prior to the filing of this action to the present.

14.    The Virginia Class Members are all current and former tipped employees who worked for Defendants for at least one week in Virginia during the three year period prior to the filing of this action to the present.

15.    The FLSA Class Members and the Virginia Class Members shall be collectively referred to as the "Class Members."

16.    Defendant True Food Kitchen Holdings, LLC is a foreign limited liability company doing business in Arizona.  Said Defendant may be served with process by serving its registered agent CT Corporation System at 3800 North Central Avenue, Suite 460, Phoenix, AZ 85012.

17.    Defendant FRC Balance, LLC is a domestic limited liability company doing business in Arizona.  Said Defendant may be served with process by serving its registered agent CT Corporation System at 3800 North Central Avenue, Suite 460, Phoenix, AZ 85012.

18.    Personal jurisdiction exists over Defendant FRC Balance, LLC because it is an Arizona company.  Personal jurisdiction exists over Defendant True Food Kitchen Holdings, LLC because it maintains its principal place of business in Arizona and in this

District. Additionally, Defendant True Food Kitchen Holdings, LLC is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privileges of conducting activities in Arizona and established minimum contacts sufficient to confer jurisdiction. Defendant True Food Kitchen Holdings, LLC does business in Arizona, employs residents of Arizona, advertises in Arizona, markets to Arizona customers, and the decision to pay Plaintiff and the Class Members in the illegal manner described in this Complaint was made in Arizona. Therefore, the assumption of jurisdiction over Defendant True Food Kitchen Holdings, LLC will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. Defendant True Food Kitchen Holdings, LLC also has had and continue to have continuous and systematic contacts with Arizona sufficient to establish general jurisdiction over it.

## COVERAGE

19.    At all material times, Defendants have been employers within the meaning of the FLSA.  29 U.S.C. § 203(d).

20.    At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

21.    At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

22.    At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

23.    At all material times, Plaintiff was an employee of Defendants as defined by Va. Code Ann. §§ 40.1-28.9(B), 40.1-28.11.

24.    At all material times, Defendants were and continue to be "employers" as defined by Va. Code Ann. §§ 40.1-28.9(A).

25.    At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is Defendants perform related activities through unified operation and common control for a common business purpose.

26. Defendants operate a nationwide chain of restaurants with the name "True Food Kitchen" under the control of the same senior level management. Indeed, the restaurants advertise themselves as a unified entity through the same website.

27. Defendants represent themselves to the public as one restaurant operating at multiple locations. They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

28. Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

29. Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

## FACTS

30. Defendants operate a nationwide chain of restaurants under the trade name "True Food Kitchen" throughout the U.S. Specifically, Defendants operate in Arizona, Colorado, Florida, Georgia, Illinois, Louisiana, Maryland, Missouri, New Jersey, New York, Ohio, Texas and other states. (*See* https://www.truefoodkitchen.com/locations/, last visited 10/22/2022).

31. True Food Kitchen restaurants are full-service restaurants that employ servers and bartenders to provide services to customers.

32. A server gathers orders from customers and delivers food and drinks to the customers. A server is paid an hourly wage by Defendants and receives tips from customers. A bartender prepares and serves drinks to customers. A bartender is paid an hourly wage by Defendants and receives tips from customers.

33. However, Defendants paid these tipped workers less than the minimum wage.

34. Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their tipped workers, including the Plaintiff and Class Members.

35. Plaintiff worked for Defendants at the True Food Kitchen in Fairfax, Virginia. He worked as a server and was paid less than the federal minimum wage. His hourly rate

1    was $2.13 per hour. Plaintiff worked for Defendants during the past three years. He

2    worked from approximately April 2019 to March 2020.

3        36.        The tip credit has a harmful effect on workers that threatens the health of the

4    economy. Adasina Social Capital, a company representing investors with more than $538

5    billion in assets, has issued a letter large corporations operating restaurants advising of the

6    ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-

7    ending-the-subminimum-wage/, last visited October 22, 2022). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent
> approximately six million people in the United States. The restaurant
> industry by far employs the largest number of tipped workers, representing
> 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be**
> **paid as little as $4,430 per year for full-time work. As a result, in the 42**
> **states that allow payment of a subminimum wage, tipped workers are**
> **more than twice as likely to live in poverty, and the rates are even higher**
> **for women and people of color.** The subminimum wage for tipped workers
> has risen little since it was enacted following the emancipation of slavery, a
> time when employer trade associations pushed to recoup the costs of free,
> exploited labor.

(*Id.*) (emphasis in original)

21        37.        Given the harmful effects of the tip credit, there are strict requirements that

22    must be met by an employer who seeks to utilize the trip credit to meet its minimum wage

23    obligations.

24        38.        In this case, Defendants did not satisfy the strict requirements to use the tip

25    credit. Defendants maintained a policy and practice whereby they failed to provide the

26    Plaintiff and the Class Members with the statutorily required notice regarding (1) the

27    amount of the cash wage that is to be paid to the tipped employee, (2) the amount by

28    which the wages of the tipped employee are increased on account of the tip credit, (3) that

all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, (4) that the hourly wage paid to the Plaintiff and Class Members cannot be lower than the minimum tipped wage, (5) that they cannot pay for any work related expenses, and (6) that the tip credit shall not apply to any employee who does not receive the notice, amongst other violations.

39.     Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate.  While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

40.     These duties include but are not limited to the following: sweeping floors, mopping floors, taking out trash, wiping walls, doing dishes, and polishing silverware, amongst other activities that were not related to a tipped occupation.

41.     Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent and/or for consecutive periods of time of more than 30 minutes, performing non-tip producing side work related to the employees' tipped occupation.

42.     Specifically, Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, refilling condiments, rolling silverware, making tea and coffee, restocking ice, setting up fountain machines, and cleaning and stocking the serving line, amongst other non-tip producing duties.

43.     Further, Defendants required Plaintiff and the Class Members to perform non-tip producing work prior to the opening of the restaurant, in the middle of their shifts, and after the restaurants closed.  Indeed, Defendants required the Plaintiff and the Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendants required the Plaintiff and Class Members to remain at the

restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they spent 31 minutes to two hours performing non-tip producing work before the restaurant was open, in the middle of their shifts, and after the restaurant was closed.

44.     However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

45.     During Plaintiff's and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

46.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

47.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

48.     Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track the specific tasks for Plaintiff or the Class Members.

49.     Defendants use a point-of-sale system to record hours worked by their tipped employees. Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track the specific tasks for Plaintiff and the Class Members.

50.    In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

51.    However, Defendants did not allow their tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

52.    Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

53.    Moreover, Defendants violated the law by not even paying the minimum "tipped" hourly rate. Defendants required their tipped employees to pay for items for their uniform, including pants, belts, and shoes.  These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

54.    Because Defendants paid their tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in which a tipped employee was required to pay for work related expenses for Defendants' business, his/her compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

55.     In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced. As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

56.    Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

57.    As such, Plaintiff and the Class Members were not compensated at the federally mandated minimum wage.

58.    Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the law. Rather,

Defendants acted knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Defendants' method of paying Plaintiff and the Class Members was not based on a good faith and reasonable belief that their conduct complied with the law.

**DUAL JOBS REGULATION**

59.    On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a new standard for interpreting the dual jobs regulation that was different than the "80/20" rule and prior Department of Labor opinion letters and guidance that had existed for the past approximately 30 years. However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference given the sudden an unexpected change by the Department of Labor. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

60.    Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).

61.    After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

62.    After delaying the effective date of the Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit."

(https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

63.    After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

64.    Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit. This regulation provides additional guidance relating to the existing rule that a worker cannot perform non-tip generating work for excessive periods of time.

65.    Here, Defendants illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time. That is because Defendants required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, and after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips. During this time, Defendants paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

66.    Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendants.

## COLLECTIVE ACTION ALLEGATIONS

67.    Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

68.     Plaintiff has actual knowledge, through conversations with his co-workers that a collective of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

69.     The Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

70.     Like Plaintiff, the Class Members were not given proper notice of the tip credit provisions, performed substantial work that was unrelated to their tip producing duties for a significant period of time, and performed non-tip producing side work for more than 20% of their work time and/or for more than 30 consecutive minutes during their shifts.

71.     Moreover, the Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

72.     Plaintiff and the Class Members all labored under the same corporate structure, were required to follow the same corporate policies, had the same corporate chain of command, and were subject to the same rules in the company handbook.

73.     Plaintiff and the Class Members also had the same job description, performed similar duties, used the same point of sale system, and were paid under the same pay system pursuant to company-wide policies.

74.     The names and address of the Class Members of the are available from Defendants' records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

75.     Although the exact amount of damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

76.     As such, the class of similarly situated Class Members is properly defined as follows:

**All current and former tipped employees who worked for Defendants**
**for at least one week during the three-year period prior to the filing of**
**this action to the present.**

### VIRGINIA CLASS ALLEGATIONS

77.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Virginia Class Members which is comprised of the following:

**All current and former tipped employees who worked for Defendants**
**for at least one week in Virginia during the three year period prior to**
**the filing of this action to the present.**

78.     Numerosity.  The number of members in the Virginia Class is believed to exceed forty.  This volume makes bringing the claims of each individual member of the Virginia Class before this Court impracticable.  Likewise, joining each individual member of the Virginia Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Virginia Class will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.   To require individual actions would prejudice the Virginia Class and Defendants.

79.     Typicality.  Plaintiff's claims are typical of the Virginia Class because like the members of the Virginia Class, he was subject to Defendants' uniform policies and practices and was compensated in the same manner as others in the Virginia Class. Plaintiff and the Virginia Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Virginia law.  As such, Plaintiff's claims are typical of the claims of the Virginia Class.  Plaintiff and all members of the Virginia Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

80.     Adequacy.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Virginia Class because it is in his interest to effectively prosecute

the claims herein alleged in order to obtain the unpaid wages and penalties required under Virginia law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Virginia Class he seeks to represent.

81. Commonality. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

    a. Whether Defendants properly informed Plaintiff and the Virginia Class Members of the intent to claim the tip credit;

    b. Whether more than 20% of the work performed by Plaintiff and the Virginia Class Members was non-tip generating work;

    c. Whether Plaintiff and the Virginia Class Members were required to perform more than 30 minutes of contemporaneous non-tip producing work;

    d. and

    e. Whether Plaintiff and the Virginia Class Members were subject to unlawful expense practices.

82. The common issues of law include, but are not limited to;

    a. Whether Defendants can claim the "tip credit";

    b. Whether Defendants violated the Virginia Minimum Wage Act;

    c. Whether Plaintiff and the Virginia Class are entitled to compensatory damages;

    d. The proper measure of damages sustained by Plaintiff and the Virginia Class Members; and

    e. Whether Defendants' actions were "willful."

83. Superiority. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Virginia Class could afford to pursue individual litigation against a company the size of Defendants, doing

so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the Virginia Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

84.     A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Virginia Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  Notice of the pendency and any resolution of this action can be provided to the Virginia Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication.  The identity of members of the Virginia Class is readily identifiable from Defendants' records.

85.     This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; and (2) the burden is on Defendants to prove it properly compensated its employees including any potential exemptions that might apply.  Ultimately, a class action is a superior form to resolve the Virginia claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Virginia Class Members per applicable Virginia laws.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS

### FAILURE TO PAY THE MINIMUM WAGE

86.     Plaintiff incorporates the preceding paragraphs by reference.

87.     This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

88.     Plaintiff and the Class Members were paid hourly rates less than the minimum wage while working for Defendants.

89.     Plaintiff and the Class Members were not exempt from the minimum wage requirements of the FLSA.

90.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the Federal minimum wage rate.

91.     Defendants' practice of failing to inform its employees of its intent to rely on the tip credit to meets its minimum wage obligations violates the FLSA.

92.     Defendants' failure to pay the minimum wage to Plaintiff and the Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA.  To foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA.  29 U.S.C. § 255(a).

COUNT II

VIOLATION OF THE VIRGINIA MINIMUM WAGE ACT

FAILURE TO PAY THE MINIMUM WAGE

93.     Plaintiff incorporates the preceding paragraphs by reference.

94.     This count arises from Defendants' violation of the Virginia Minimum Wage Act in connection with their failure to pay the minimum wages. *See* Va. Code Ann. § 40.1-28.10.

95.     Plaintiff and the Class Members were paid hourly rates less than the Virginia minimum wage while working for Defendants. *See id*.

96.     Plaintiff and the Class Members were not exempt from the minimum wage requirements under Virginia law.

97.     Defendants' failure to comply with the minimum wage requirements of Virginia law, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the Virginia minimum wage rate.  Defendants' violation of the Virginia law was willful.

98.    Defendants' practice of failing to inform its employees of its intent to rely on the tip credit to meets its minimum wage obligations violates Virginia law.

99.    Defendants' failure to pay the minimum wage to Plaintiff and the Class Members, in violation of Virginia law was willful and not based on a good faith belief that their conduct did not violate Virginia law.

## WAGE DAMAGES SOUGHT

100.    Plaintiff and the Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

101.    Plaintiff and the Class Members are entitled to reimbursement for all work related expenses they paid.

102.    Plaintiff and the Class Members are entitled to liquidated damages and interest.

103.    Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs.

## JURY DEMAND

104.    Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

105.    For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding him and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Liquidated damages;

c.  All misappropriated funds including all expenses, and wages wrongfully withheld;

d.  An order requiring Defendants to correct their pay practices going forward;

e.  Reasonable attorney's fees, costs, and expenses of this action;

f.  Pre and post judgment interest; and

g.  Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Dated October 24, 2022.

RESPECTFULLY SUBMITTED BY

By: ____/s/ Don J. Foty_____
Don J. Foty
Texas Bar No. 24050022
(*pro hac vice motion forthcoming*)
HODGES & FOTY, LLP
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone:  713-523-0001
Facsimile:  713-523-1116
dfoty@hftrialfirm.com

And

Anthony J. Lazzaro
Ohio Bar No. 0077962
(*pro hac vice motion forthcoming*)
Chastity L. Christy
Ohio Bar No. 0076977
(*pro hac vice motion forthcoming*)
Lori M. Griffin
Ohio Bar No. 0085241
(*pro hac vice motion forthcoming*)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
chastity@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff and the Putative Class

## CONSENT FORM

1.  I consent and agree to pursue my claims for unpaid overtime and/or minimum wages through a lawsuit or arbitration case filed against True Food Kitchen.

2.  I understand that the claims are brought under the Fair Labor Standards Act and/or state wage and hour laws.  I hereby consent, agree and opt-in to become a plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

3.  I intend to pursue my claim individually, unless and until the court or parties certify the case as a collective or class action.  If someone else serves as the class representative(s), then I designate the class representative(s) as my agent(s) to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with Plaintiff's counsel concerning fees and costs, the entering into a settlement agreement with my employer, and all other matters pertaining to this action.

4.  In the event the case is not conditionally certified or decertified after conditional certification, I authorize Plaintiff's counsel to use this Consent Form to re-file my claims in a separate or related action against my employer.  In the event my claim must be brought in arbitration, I authorize Plaintiff's counsel to file a claim for arbitration on my behalf.

5.  I understand that Plaintiff's counsel agrees to represent me on a contingency fee basis without any prepayment of attorneys' fees or costs.  The fees and costs will either be subtracted from the total recovery obtained from my employer in the amount of thirty-three and one-third percent (33-1/3%) of my total recovery plus costs expended by Plaintiff's counsel on my behalf, or they may be paid separately by my employer.  If there is no recovery, Plaintiff's counsel will not be paid for their work on this case.

Signature:     *Jacob Ortiz*
               Jacob Ortiz (Nov 9, 2021 22:01 EST)

Date:    Nov 9, 2021

## EXHIBIT "A"